AMY NORDSELL, Indiv. and as Special Adm'r of the Estates of Cara Aubrey Nordsell, Deceased, and Sara Katherine Nordsell, Deceased, Plaintiff-Appellant, v. VERNON KENT *et al.*, Defendants-Appellees.

Third District    No. 3—86—0304

Opinion filed July 7, 1987.

Laird M. Ozmon, Ltd., of Joliet (Laird M. Ozmon, of counsel), for appellant.

Edward R. Duncan, Jr., of O'Reilly, Cunningham, Duncan & Huck, of Wheaton (Thomas J. Koch, Ted Jarz, and Amy Dixon Mayber, of counsel), for appellee Vernon Kent.

Theodore J. Jarz, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee Silver Cross Hospital.

Eric F. Quandt and Amy Dixon Mayber, both of Sidley & Austin, of Chicago, for appellees Rudy Sabbagha and Northwestern Memorial Hospital.

Richard W. Schumacher, Barry L. Kroll, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, and Michael C. Weston and James M. Perry, both of Northwestern University of Evanston, for appellee Northwestern Memorial Hospital.

JUSTICE BARRY delivered the opinion of the court:

In this medical malpractice action, plaintiff Amy Nordsell appeals from orders of the circuit court entering summary judgment in favor of defendants Dr. Vernon Kent and Silver Cross Hospital and dismissing her complaint as to defendants Northwestern Memorial Hospital and Dr. Rudy E. Sabbagha.

According to the allegations of plaintiff's complaint, Amy Nordsell was admitted to Silver Cross Hospital on July 26, 1983, where she gave birth to twin girls. Cara Aubrey Nordsell was stillborn, while Sara Katherine Nordsell lived until August 9, 1983. Plaintiff has alleged that defendants Kent and Sabbagha failed to properly assess the gestational age of the unborn twins, thereby allowing plaintiff to proceed with premature labor resulting in emergency surgery. She has further alleged that the defendant hospitals, through their respective agents, failed to properly assess the gestational age of her unborn twins.

All four defendants have asserted as grounds for dismissal of the complaint and/or for summary judgment section 13—212 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—212), which provides in pertinent part as follows:

"No action for damages for injury or death against any physi-·cian *** or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first ***."

Defendants further assert in their motions that plaintiff alleges defendants' negligence caused injury to Amy and the death of Cara on July 26, 1983, and the death of Sara on August 9, 1983, and that the complaint was filed on August 14, 1985, more than two years after the dates of the injuries and deaths.

In opposition to the motions to dismiss and for summary judgment, plaintiff filed copies of the death certificates of the twins and her own affidavit. In her affidavit, plaintiff averred that she was told by Dr. Kent and other hospital employees that "the twins were simply too small and that post-natal death was not uncommon under those circumstances"; that she had no knowledge of any wrongdoing on the part of anybody until well after August 15, 1983, when legal consultation produced documentation that Dr. Kent failed to properly diag-

nose the twins' gestational age; and that she received post-operative treatment after the death of her twins and was unable to consider alternative causes of death. The death certificate of Cara stated that the immediate cause of death was "stillborn due to or as a consequence of placental insufficiency at 30 wks. gestation." The death certificate for Sara listed as the cause of death, "renal failure" and also listed "prematurity" as another significant condition.

The trial court granted the motions for summary judgment in favor of Dr. Kent and Silver Cross Hospital and granted the motions to dismiss of Dr. Sabbagha and Northwestern Memorial Hospital. After plaintiff's motions to reconsider those rulings were denied, this appeal followed.

During oral argument before this court, counsel for plaintiff stated without contradiction that Dr. Kent had been plaintiff's obstetrician during her pregnancy, that he had prescribed medication to prevent a spontaneous abortion of the fetuses, that Dr. Sabbagha and Northwestern Hospital performed a sonogram to help determine the gestational age, that shortly before July 26, 1983, Dr. Kent stopped the drug, and plaintiff was admitted to Silver Cross Hospital for delivery.

■ On appeal, plaintiff admits that the holding of *Lutes v. Farley* (1983), 113 Ill. App. 3d 113, 446 N.E.2d 866, mandated a dismissal of the counts of her complaint that apply to Cara, the stillborn infant. In *Lutes v. Farley,* this court said:

> "The discovery rule as applied to medical malpractice cases means that the cause of action does not accrue in the sense of triggering the statute of limitations until the plaintiff learned of her injury or should have learned of it." (113 Ill. App. 3d 113, 115, 446 N.E.2d 866.)

We further held that burden falls upon the injured person at the time of discovery of the injury and causation, to inquire further as to the existence of a cause of action. There the plaintiff delivered a stillborn child in May of 1978 after receiving morphine, and she alleged in her complaint that she did not learn of the wrongful causation of that injury until July of 1980 when her sister began studying nursing and learned that morphine should not be administered to pregnant women. We ruled that the stillbirth of a child "is a sudden, traumatic event which should prompt some investigation by the injured party and trigger the application of the discovery rule." (113 Ill. App. 3d 113, 115, 446 N.E.2d 866.) Similarly, in the case at bar, the stillbirth of Cara was the sort of traumatic event which should prompt some investigation of causation and which would trigger the statute of limi-

tations as to her under the discovery rule.

Plaintiff argues, however, that a different situation exists as to Sara, who survived for two weeks after birth. Since no injury occurred until Sara's death, and since both the cause and date of death were different than for Cara, the statute of limitation should not begin to run until such time after August 9, 1983, as plaintiff should have known of a reasonable inference of defendants' malpractice in determining the gestational age of the babies. Plaintiff says the determination of this date is really a question of fact which should preclude entry of summary judgment. Plaintiff further argues that, since Sara was not stillborn, but rather lived two weeks and then died of renal failure due to prematurity, the stillbirth of Cara did not trigger the discovery rule as to Sara. Plaintiff says that the two deaths were for "unrelated causes" and that she had no knowledge of the erroneous determination of gestational age until some time after August 15, 1983, when she consulted an attorney.

Plaintiff's argument that the *Lutes v. Farley* decision does not apply to Sara would be more persuasive if plaintiff had alleged a different negligent act as the basis for her cause of action. However, she did not. As to both twins, plaintiff alleged negligence in the improper determination of gestational age. Although one twin was stillborn and one lived a few days, the underlying problem was—as alleged for both—premature birth. In fact, logic would indicate that if one twin was born prematurely, the other one must have been as well.

Additionally, the burden of specifically pleading facts in the complaint showing the date plaintiff reasonably could have learned of the injury rests upon her. (*Kielminski v. St. Anthony's Hospital* (1979), 68 Ill. App. 3d 407, 386 N.E.2d 326.) The complaint does not contain any allegations concerning the date she reasonably could have learned of the wrongful cause of the injury, and although she filed an affidavit, as indicated above, no attempt was made to amend the complaint in the trial court.

Even if Cara's stillbirth did not trigger the discovery rule as to Sara, nevertheless Sara's death two weeks later was the same sort of traumatic injury as would cause plaintiff to inquire into the existence of a cause of action as to Sara. (*Bates v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 137, 438 N.E.2d 1250.) In other words, the two-year statute of limitations on a medical malpractice cause of action for Sara's death began to run on the date of death: August 9, 1983. This determination is properly a question of law. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 1322.) The trial court did not err in ruling that plaintiff's causes of action were barred.

Plaintiff has argued before this court that she could not have known of the alleged malpractice until she received the death certificates, and she claims not to have received them until August 19, 1983. However, this argument is based upon facts not in the record on appeal, and plaintiff's motion to supplement the record, filed after oral argument in this cause, has been denied by this court. Therefore, we will not consider this assertion.

■ Plaintiff also contends that the five-year statute of limitations on actions for fraudulent concealment of a cause of action (Ill. Rev. Stat. 1985, ch. 110, par 13—215) applies here. Section 13—215 provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards."

She relies upon her assertion in her affidavit that Dr. Kent and employees of Silver Cross Hospital informed her that her babies were "too small," thereby concealing the fact that they were premature and that the gestational age had been wrongly determined. Plaintiff raises this issue for the first time on appeal. She did not attempt to amend her complaint in the trial court to include a cause of action under section 13—215, and her affidavit does not include facts to support all the elements of such a cause of action. For example, she does not assert an intention to deceive, or that she was misled, or that she relied on any misrepresentations to her detriment. (*Harvey v. Harris Trust & Savings Bank* (1979), 73 Ill. App. 3d 280, 391 N.E.2d 461.) Accordingly, we hold that plaintiff was not entitled to a five-year period of limitation.

For the reasons stated, we affirm the orders of the circuit court of Will County.

Affirmed.

STOUDER and SCOTT, JJ., concur.